## ALFORD v. UNITED STATES.
### No. 6028.

Circuit Court of Appeals, Ninth Circuit.
May 26, 1930.

Rehearing Denied June 26, 1930.

DIETRICH, Circuit Judge, dissenting.

Leo R. Friedman, of San Francisco, Cal., for appellant.

Samuel W. McNabb, U. S. Atty., and P. V. Davis and Gwyn S. Redwine, Asst. U. S. Attys., all of Los Angeles, Cal.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

WILBUR, Circuit Judge.

The appellant was convicted of using the mails to execute a scheme to defraud in violation of 18 USCA § 338, Criminal Code, § 215. Appellant claims that one of the essential elements of the scheme alleged in the indictment was not proved, and that therefore he was convicted of a different scheme than that alleged in the indictment, and that thus his conviction is in violation of the Fifth Amendment of the Constitution (article 5), requiring that prosecutions be instituted by indictment. To understand this contention the allegations of the indictment which are rather lengthy will be summarized. The alleged scheme was to secure money from the victims by representing to them that the appellant was drilling and would continue to drill a development well upon a large tract of potential oil land in Cimarron county, Okl., of about 30,000 acres at a cost of $300,000; that the purchaser of such land from the appellant would secure by his grant deed to be executed when payment was completed a fee-simple title to the acre or more described in the contract of sale therefor which was to be executed by the appellant upon part payment of the purchase price. It is alleged that appellant did not have title to the land sold and that he had no intention of securing title; that he did not intend to execute a deed; that the appellant was not drilling an oil well thereon as stated and he made the promise to continue to drill the development well without any intention of doing so. That is to say, he was to secure money by a fraud-ulent promise to convey land which he had no intention of conveying and by a fraudulent promise to drill a well he had no intention of drilling, and by a false representation that he was in fact then drilling such a development well which he was not drilling. The misstatement as to actual drilling was capable of direct contradiction and was so contradicted. The fraudulent intent with which the promise to convey title, and to continue to drill a development well, were made was necessarily to be proved by circumstantial evidence. Many of the allegations of the indictment are statements of the evidence tending to prove that these promises were made fraudulently with no intention to perform the same. These other evidentiary features of the alleged scheme or plan, it will be observed, set forth a plan not intended to be disclosed to the public. Along this line it is alleged that on January 17, 1927, the appellant secured an option on said 30,000 acres of land, which he had no intention of exercising; that the option required the payment of $25,200 in thirty-one days on February 18, 1927, whereupon a deed was to be given for 1,680 acres. That another payment of $32,400 for 2,160 acres of the land was to be made by April 17, 1927, which he did not intend to make and which he did not and could not make. The evidence shows without any conflict that the appellant made the false representation that he was actually drilling a well. The jury were justified from the evidence in concluding that the appellant never intended to drill the well. They were also justified in concluding from the evidence that the appellant did not intend to convey the land he agreed to sell. On this subject the evidence showed that the appellant merely had the option upon the land and that in order to perfect title to the acreage he sold it was essential that he make a payment by April 17, 1927, for which he had made no preparation and had no reasonable expectation of paying. It is true that the land he was to purchase at $15 an acre he was selling for $100 an acre by the false pretenses above mentioned, but the contracts were executed with a preliminary payment of 40 per cent. down and of this 62½ per cent. was paid for commission, leaving no substantial part of the payments to be applied to the next installment upon the option contract which was so soon to be due. This, and other evidence which need not be stated, justified the finding of the jury as to fraudulent intent of the appellant in making the representations that he would convey fee-simple title to the land in question. This agreement to convey the land

so that upon payment of the purchase price the purchaser would have had the advantage of whatever speculative value the land might have and also the actual value, whatever it might be, was an essential part of the scheme to procure money from the intended victims. The appellant's main contention is not that the evidence is insufficient to show that the appellant procured the money by fraudulent representations alleged in the indictment, although it is contended that the evidence is insufficient to establish the fraudulent intent with which the promises were made, but is based upon the fact that certain allegations are made in the indictment concerning the plan or scheme of the appellant to take care of the dissatisfied victims upon their ascertaining that they could not obtain the land which the appellant had agreed to convey to them. This scheme or plan, it was alleged, was that after the appellant had secured from his victims the partial or complete payments for the units, or acres, sold to them at the rate of $100 per acre he was to inform them that the oil prospects upon which they had been induced to purchase the land were not as bright as had been anticipated; that they were thereupon to be invited to join a new scheme wherein their interest in the original plan and scheme was to be exchanged for an interest in the new project which was called the "Ten-Way-To-Win-Syndicate"; that it was to be represented to these victims that this new scheme involved giving them an interest in each of ten different tracts of land widely separated in prospective oil territory, in each of which a well was to be drilled by a contractor who already promised to drill to a depth of 4,500 feet without requiring payments until that depth had been reached and without obligation on the part of the victim who was thus assured of ten chances to win in lieu of the bargain he had theretofore made. Proof was offered to support this allegation to the effect that immediately upon default upon the second installment of the option for the 30,000 acres which terminated the appellant's interest in a control over that acreage, this plan was at once broached.

In the absence of an affirmative proof that this plan had been conceived prior to or as a part of the original scheme of the sale of land in the 30,000-acre tract, the court granted defendant's motion to strike the evidence out, thus leaving the prosecution without any evidence to support these allegations in the indictment. While such evidence was clearly admissible to show that there was never any intent to complete the purchase of 30,000 acres, nevertheless, having been stricken out, it cannot be considered. It will be observed that at the time the "Ten-Way-To-Win-Syndicate" plan was advanced by the appellant, the fraud upon the victims had been fully perpetrated. In so far as it was a part of the original scheme it had no connection with the plan to defraud the proposed victim other than a method or means whereby the appellant secretly planned a device and method for his own protection against the obvious results of making such contracts of sale without any means of complying with them. While this plan of escape was alleged to be a part of the original plan, the question is whether upon a complete failure to prove this portion of the plan the verdict of the jury can be sustained. We see no difficulty in upholding the verdict of the jury, for the simple reason that the scheme to defraud found by the jury from the evidence was in essence and substance the scheme to defraud alleged in the indictment and the same scheme which was submitted to the grand jury. It was relatively immaterial, if not entirely inconsequential, what plans the appellant had devised for his escape from the predicament in which his fraud placed him. If it had been alleged in the indictment that it was a part of the plan to escape with the proceeds of his fraud to some foreign state, it would at once be clear that such allegations were merely allegations of evidentiary matter tending to show consciousness of wrong-doing. The plan alleged in the indictment is of the same character and the proof thereof was not essential. It was essential that the scheme alleged should be proved in substance. That scheme was one to sell land by falsely pretending that the purchaser would be given title and that its potentialities for oil were being and would be developed by the appellant.

Cameron Bradley, a witness for the government, formerly employed by the appellant in connection with his plan to sell the land hereinbefore mentioned, testified at length concerning his relation to the sale and concerning appellant's conduct with relation thereto. On cross-examination appellant asked this witness where he lived. This was objected to by the district attorney, and the court remarked, "I cannot see the materiality." Appellant's counsel stated: "Why, I think the jury has a perfect right to know who the witness is, where he lives and what his business is, and we have a right to elicit that on cross-examination. I may say that this is the first witness the Government has

called that they have not elicited the address from." The Court: "I will sustain the objection." Again the witness was asked: "Do you live in Los Angeles?" To this the district attorney objected as immaterial. To the court's statement that he had already ruled on that question, appellant's counsel stated: "I would like, if the Court please, our exception noted to the Court's ruling made yesterday after the jury retired to the effect that we could not inquire as to the present address and residence of the witness." The jury was excused, whereupon the matter of the introduction of the cross-examination of the witness with relation to his residence was taken up, and the attorney for the appellant stated: "I have been informed and caused to believe that this witnesss is now in the custody of the federal authorities. If that is so I have a right to show that for the purpose of showing whatever bias or prejudice he may have." The court sustained the objection to this question upon the theory that the witness could not be impeached by such evidence but only by evidence that he had been convicted of a felony. It is customary to allow cross-examination of a witness with reference to his place of residence. In some instances it is required that a witness must state his residence (St. Cal. 1851, p. 229, § 162; Pen. Code Cal., §§ 869, 882; People v. Mitchell, 64 Cal. 85, 27 P. 862), and there would seem to be no good reason why this should not be done in all cases upon cross-examination. The purpose of such evidence is to identify the witness and to some extent give proper background for the interpretation of his testimony. In this case, however, the counsel indicated his purpose to use the information for the purpose of discrediting the witness. It is part of the obligation of a trial judge to protect witnesses against evidence tending to discredit the witness unless such evidence is reasonably called for by exigencies of the case. A witness is not on trial and has no means of protecting himself. Here it was evident that the counsel for the appellant desired to discredit the witness, without, so far as is shown, in any way connecting the expected answer with a matter on trial. If it had been contended that the witness was in custody because of his participation in the transaction with which the appellant was charged, and if it was sought to show that he was testifying under some promise of immunity, it would undoubtedly have been prejudicial error to have excluded such testimony; but counsel avowed no such purpose, and indicated that the proposed question was merely in pursuit of a fishing expedition by which

he hoped to discredit the witness. The witness was examined at great length concerning his relation to the appellant and great latitude was accorded in that examination.

The indictment contains six counts based upon the mailing of six different letters. The trial court deeming that the evidence on the third and fourth count was insufficient withdrew the consideration thereof from the jury. The letter set forth in the first count of the indictment was written May 18, 1927, to Bessie E. McCluggage, at 1184 No. Alexandria avenue, Los Angeles, Cal. The addressee testified that she received this letter in an envelope which was also received in evidence, postmarked Los Angeles, through the mail. A witness who testified that she was the stenographer for Mr. Alford at the time the letter was mailed, testified that she typed it and that she was positive that she placed it in the mail because she was the stenographer at the time the letter was mailed. She also testified to the same effect with relation to a letter set forth in the second count dated May 24, 1927, addressed to Charles E. Hood, 2601 Cherry, at Willow, Long Beach, Cal. This letter was signed by Mr. Alford, and the stenographer testified that either she or Miss Green mailed all the letters that were written. On cross-examination she testified that she was working in the office of the appellant from February to July, 1927, that the letters in evidence were dictated in the usual way, taken down in shorthand, that she mailed all the letters that were written, and there was no reason why she should not mail such letters although she admitted that she did not know it was mailed; but on redirect examination she again asserted that she was positive all these letters were mailed. It is apparent from the testimony of this witness that while she may not have had a distinct recollection in regard to the mailing of each particular letter that was dictated to her, she did have a knowledge of the custom of the mailing of the letters dictated to her and signed by the appellant, and that she had followed the usual custom in this case. Mr. Hood, the addressee of the letter set out in the second count, testified that he received the letter through the mail. The evidence with reference to the mailing of the letter was sufficient to justify the verdict of the jury.

As to instruction No. 10 referred to on page 72 of appellant's brief, the court did give substantially this instruction. The requested instruction states that the evidence must establish the fact that the defendant knew at the time of making such promise or

representation that it would not be fulfilled, whereas the court properly instructed the jury that, if when the promise was made the defendant had no intention of performing, such promise was fraudulent.

The court also instructed the jury that if the defendant devised the scheme set forth in the indictment and made false and fraudulent representations for the purpose of deceiving persons with respect to his ownership of the land in Cimarron county, Okl., etc., a subsequent ultimate intent to reimburse the investors by no means furnished a condonation or legal excuse for false representations, but such fact could be considered by the jury in determining whether there was an intent to defraud. Appellant complains of this instruction on the ground that it is not alleged in the indictment that the appellant misrepresented his title. This statement concerning the indictment is true, but the court elsewhere instructed over and over that it was necessary to prove the allegation of the indictment beyond a reasonable doubt in order to convict the appellant. The allegations in the indictment concerning title were quoted in the instruction. The jury were therefore properly instructed as to what proof was necessary to substantiate the charge in the indictment. The instruction with reference to misrepresentation concerning title was for the purpose of informing the jury that an ultimate intent to repair the fraud would not excuse fraud. That this instruction incorrectly assumed that there was an affirmative charge of misrepresentation as to title, is, in the light of this fact, not significant.

With reference to counts 5 and 6, it is unnecessary to consider the evidence on these counts for the reason that the sentences thereon run concurrently with the sentence under counts 1 and 2 and are for a shorter period.

Judgment affirmed.

DIETRICH, Circuit Judge (dissenting).

I had supposed it to be a universal rule that, within reasonable limits, a cross-examiner has the right to disclose by cross-examination the conditions under which a witness testifies and the environment from which he comes to the witness stand in order to enable the jury more justly to weigh his testimony. Generally, in case of objection, counsel cannot be required to declare what he expects to prove (Buckstaff v. Russell, 151 U. S. 626, 14 S. Ct. 448, 38 L. Ed. 292); but particularly is this true of a cross-examination. Touching considerations affecting the credibility of the witness, the cross-examiner often cannot know in advance just what facts he will be able to uncover. Sometimes, as apparently was the case here, he may have intimation of a condition which in itself probably would be of little or no importance, but which with the surrounding circumstances when fully disclosed may very greatly affect the credibility of the witness and the weight of his testimony. To me, therefore, it seems to be beside the question to suggest, as stated in the majority opinion, that counsel "was merely in pursuit of a fishing expedition by which he hoped to discredit the witness." Much cross-examination is necessarily exploratory and the limitation thus implied would greatly impair the right.

The lower court apparently proceeded upon the erroneous theory that defendant was limited to proof that the witness had been convicted of a felony. That might have been true had defendant's sole object been the impeachment of the witness in point of general character; but an unimpeachable witness may give impeachable testimony. Though not color-blind, he may have looked through colored glasses. So, conceding the honesty of the witness here, it was competent to show that he testified under conditions by reason of which, consciously or unconsciously, his testimony was colored, and that he was subject to influences coercive in their tendency, or was so far subject to the power of the government officers, including the district attorney, that he hoped to curry favor with them. His protection against needless humiliation would seem to be scarcely more than a pretext if he was in custody under conviction for a misdemeanor; presumably that was a fact already within the public knowledge. And if he was in custody for some other reason which we can only conjecture, before interrupting a natural and ordinary inquiry which defendant was seeking to make, the court should, in the absence of the jury, have required of the district attorney a disclosure of the conditions, which, in protection to the witness, he was contending should not be made public, to the end that an intelligent ruling might be made.

It comes with poor grace from the district attorney now to say that even if erroneous, the ruling was not prejudicial. If he did not fear the effect of the desired disclosures, why did he so promptly and persistently resist the offer to make them? To me it is little less than amazing that objection was interposed to a simple inquiry as to where the witness lived.

I further think that the instructions given

do not fully cover defendant's request No. 10; and that there was error in giving an instruction in which reference was made to "false and fraudulent representations and assurances for the purpose of deceiving persons with respect to defendant's ownership of the land," for the reason that, as given, this instruction advised the jury that they should convict defendant for a fraud touching which evidence had been received but which was clearly beyond the scope of the charges laid in the indictment.