## MOYER v. UNITED STATES.
### No. 7300.

Circuit Court of Appeals, Ninth Circuit.
July 8, 1935.

Rehearing Denied Aug. 26, 1935.

Sanders & Jacques, Hugh A. Sanders, and Y. A. Jacques, all of San Diego, Cal., for appellant.

Peirson M. Hall, U. S. Atty., and Jack L. Powell, Asst. U. S. Atty., both of Los Angeles, Cal., for the United States.

Before WILBUR and GARRECHT, Circuit Judges, and NORCROSS, District Judge.

NORCROSS, District Judge.

Appellant and four others, defendants Jeffers, Pache, Grade, and Talbot, were indicted upon four counts, the first charging conspiracy "to commit in the said County of San Diego * * * an offense against the United States * * *, the offense being to * * * unlawfully import and bring into the United States contrary to law, from a foreign country, to wit: the Republic of Mexico, certain merchandise, * * * consisting of * * * intoxicating liquor, which said merchandise * * * would be, * * * unlawfully and knowingly imported * * * contrary to law, in that being then and there spirits and liquors containing alcohol in excess of one-half of one per cent. by volume, the same would be then and there imported * * * without a permit having theretofore been issued therefor by the Director of Prohibition, Department of Justice, or the Commissioner of Industrial Alcohol, Treasury Department of the United States, or any other proper officer of the United States then and there authorized to issue such permits, and in that the same would not be or ever be entered at the custom house of the United States in this judicial and collection district or at any other custom house, * * * and without the payment of duties and taxes due thereon to the United States upon such importation and bringing in, then or at any time to be paid or secured to the United States." Then follow allegations of overt acts. The second count charges conspiracy to conceal intoxicating liquor so unlawfully imported; the third, unlawful importation of intoxicating liquor; the fourth, concealment of intoxicating liquor unlawfully imported.

When the case was called for trial, defendant Talbot was not present and his bond was forfeited. At that time three of the defendants, Pache, Grade, and Jeffers, changed their pleas from not guilty to guilty on the first count of the indictment and as to them all the remaining counts were dismissed. The case then proceeded to trial on appellant's plea of not guilty. At the conclusion of plaintiff's case defendant moved for a directed verdict on all four counts, which motion was denied. At the conclusion of all the evidence, defendant again moved for a directed verdict on all counts, which motion was granted as to the second, third, and fourth counts, and denied as to the first. The jury returned a verdict of guilty on the first count.

The indictment bears the indorsement, following the number and entitlement of court and cause, "Indictment Viol: Section 593 of the Tariff Act of 1930 [19 USCA § 1593] and section 37 Federal Penal Code [18 USCA § 88] (Conspiracy to violate Section 593 Tariff Act of 1930) * * *". The minutes of the court recite that: "* * * the Court * * * pronounces sentence on defendant Bert Moyer for the crime of which he stands convicted, viz.: Violation of Section 37 Federal Penal Code (Conspiracy to violate section 593 of the Tariff Act of 1930). * * *"

From the judgment of conviction and sentence imposed thereon, and from the order denying a motion for a new trial, defendant appeals.

The appellant's brief contains 45 specifications of error based on more than twice that number of assignments set out in the transcript of record, which in turn are based on exceptions taken during the course of the trial and which are considered in appellant's brief under 13 subheads, designated A to M, inclusive. Many of the assignments of error urged are so clearly without merit that the time of the court should not be taken with their presentation. Among the number, however, are presented questions requiring consideration.

■ It is contended that the judgment should be reversed because "there was at the time of the arrest and conviction of the defendant no law of the United States imposing any duties or taxes on the importation of intoxicating liquor for beverage purposes, and there was no law requiring the entry at any custom house of the United States of the importation of intoxicating liquors for beverage purposes." This contention is based on the assumption that the adoption of the Eighteenth Amendment and enactment of the National Prohibition Act (27 USCA § 1 et seq.) made void the provisions of the tariff laws requiring the payment of duties and taxes on intoxicating liquors imported into the United States, because thereafter there could be no lawful importation. Accordingly, it is urged that the offense charged in the indictment and for which appellant stands convicted should be regarded simply as a violation of the National Prohibition Act.

While in the case of United States v. Hana (C. C. A.) 276 F. 817, 818, certiorari denied 258 U. S. 622, 42 S. Ct. 315, 66 L. Ed. 796, this court held that "unless the liquor or wine is brought in as authorized by the provisions of the Prohibition Act [27 USCA § 1 et seq.], it is not merchandise in a legal sense," in reference to questions certified by this court, the Supreme Court in General Motors Acceptance Corp. v. United States, 286 U. S. 49, 56, 52 S. Ct. 468, 470, 76 L. Ed. 971, 82 A. L. R. 600, said: "The importation of intoxicating liquors without permit and without payment of customs duties is a violation of the Tariff Act and a criminal offense thereunder. This was the law under the Tariff Act of 1922, enacted after the adoption of the Eight-

eenth Amendment. Tariff Act of 1922, c. 356, § 593 (b), 42 Stat. 982, U. S. C., title 19, § 497 (19 USCA § 497). It is still the law under the present Tariff Act of 1930, § 593, U. S. C., title 19, § 1593 (19 USCA § 1593). True, the drivers of the cars who brought these liquors from Mexico into California were subject to prosecution under the National Prohibition Act, title 2, § 29, 27 U. S. Code, § 46 (27 USCA § 46). They were subject to prosecution under the Tariff Act also (Callahan v. United States, 285 U. S. 515, 52 S. Ct. 454, 76 L. Ed. 914), and under that act they were indicted and convicted."

See, also, United States v. Stafoff, 260 U. S. 477, 43 S. Ct. 197, 67 L. Ed. 358; Whitehead v. United States (C. C. A.) 73 F.(2d) 896; Davidson v. United States (C. C. A.) 63 F.(2d) 90; Rich v. United States (C. C. A.) 62 F.(2d) 638; Kurczak v. United States (C. C. A.) 14 F.(2d) 109.

■ The indictment sufficiently charges a conspiracy to violate the Revenue Laws, particularly section 1593 (b), supra, and is not affected by the repeal of the Eighteenth Amendment. The contention in this respect is without merit.

■ It is contended: "The first count of the indictment charges defendant with two offenses, one of which is no longer a crime and it is impossible, therefore, to sustain the judgment against him." The first count charges the one offense of conspiracy. The fact that the conspiracy charge comprehends a purpose to violate two separate provisions of the statute, each constituting a distinct offense, does not present a question such as the charging of more than one offense in a single count of an indictment. United States v. Rabinowich, 238 U. S. 78, 35 S. Ct. 682, 59 L. Ed. 1211; Frohwerk v. United States, 249 U. S. 204, 39 S. Ct. 249, 63 L. Ed. 561; John Gund Brewing Co. v. United States (C. C. A.) 206 F. 386; United States v. Quigley (D. C.) 9 F.(2d) 411.

■ In the oral instructions given by the court specific reference was not made to the provisions of section 593 of the Tariff Act of 1930, 19 USCA § 1593. While generally it may be said to be the better practice to instruct the jury respecting the provisions of the statute or statutes which the purpose of the conspiracy is to violate, it is sufficient if the essential facts constituting the conspiracy charge are stated. Respecting the point in question, the instructions given contain the following statements: "As you were advised yesterday, the in-

dictment in this case charges several defendants with conspiring to violate the laws of the United States, in that the purpose was to import alcoholic liquors from the Republic of Mexico contrary to the laws of the United States, and then charges that they committed a number of overt acts. * * * There is just one count for determination by you and that is the conspiracy to import alcoholic liquor from the Republic of Mexico. * * * The design, the common design, the conspiracy to do the thing in this case was to bring the alcohol from Mexico."

The gist of the charge in the indictment is that defendants conspired "to commit an offense * * * the offense being to * * * unlawfully import * * * certain merchandise * * * consisting of intoxicating liquor, * * * without a permit having theretofore been issued therefor, * * * and in that the same would not be or ever be entered at the custom house * * *, and without the payment of duties and taxes due thereon. * * * "

By section 593 of the Tariff Act of 1930 (19 USCA § 1593) it is provided:

"§ 1593. Smuggling and clandestine importations. (a) Fraud on revenue. If any person knowingly and willfully, with intent to defraud the revenue of the United States, smuggles, or clandestinely introduces into the United States any merchandise which should have been invoiced . * * * every such person * * * shall be deemed guilty of a misdemeanor. * * *

"(b) Importation contrary to law. If any person fraudulently or knowingly imports or brings into the United States, or assists in so doing, any merchandise contrary to law * * * the offender shall be fined * * * or be imprisoned * * * or both."

At the time charged in the indictment there could not be a lawful importation of merchandise consisting of intoxicating liquor either under the National Prohibition Act or the Tariff Act without a permit. Any importation of such merchandise from the republic of Mexico, therefore, of necessity would be in violation of section 593 (b) of the Tariff Act of 1930. Under this situation it cannot be said that the instructions upon the point in question were misleading or insufficient. The instructions stated "the essence of the charge." Callahan v. United States, 285 U. S. 515, 52 S. Ct. 454, 76 L. Ed. 914.

For such bearing as it may have on any assignments of error hereinafter to be considered, the testimony may be summarized as follows:

Defendant Pache, called as a witness for the prosecution, testified to having four conversations with defendants Grade and Talbot from about the 7th to the 16th of February, 1932, at which they discussed plans to transport alcohol from Mexico by æroplane; that he later revealed the plan to appellant; that on February 21st defendants Pache, Grade, Talbot, and Moyer met and discussed the plans, and then, at appellant's suggestion, all went to Tiajuana, Mexico, and there called at the Johnson Distillery; that there appellant agreed to pay the codefendants $3 for each 5-gallon can of alcohol transported, appellant also buying the alcohol; that appellant said "he wanted to see Johnson about paying off Mexican Customs Guards to keep a friendly feeling in Mexico, and we stopped at what Moyer said was Johnson's residence in Chula Vista"; that he met defendant Jeffers at appellant's home and that appellant told him "Jeffers was one of his boys and would take care of the alcohol"; that Talbot brought a quantity of alcohol from Mexico to Camp Kearney Mesa, Cal., by plane on February 25, 1932, and he and Jeffers transported it by automobile to San Diego, where some of it was placed in appellant's garage; that Jeffers handed him the money to pay for the first load, and he handed it to Talbot; that the same afternoon Pache and Jeffers returned to the field and waited for the plane to arrive with another load of alcohol, but it did not, and they learned later that the plane had been forced down at Ream Field, Cal., about a mile and a half from the Mexican border; that appellant said to him: "They will confiscate the plane and the alcohol, and you had better go on down with Jeffers and if you are arrested don't say anything"; that Pache and Jeffers proceeded to Ream Field; that Pache drove a Buick coupé and Jeffers a Chevrolet; that at Ream Field they were arrested by United States customs inspectors after they had taken the alcohol from the plane and were putting it in an automobile.

Customs inspectors testified to having observed the plane cross the border from California to Mexico and return that afternoon; that they saw it land at Ream Field and they arrived at the field a few minutes later, but the pilot had left; that the plane was kept under observation until that night

when Pache and Jeffers arrived to take the alcohol from the plane, when they were arrested.

Appellant, as a witness in his own behalf, denied any connection with any conspiracy as charged in the indictment. He testified that he never had any conversation with any of the other defendants at any time or at all regarding the transportation or importing of intoxicating liquor into the United States, and did not know of such plans by any of the defendants in the month of February, 1932; that he had never known or seen defendants Talbot or Grade until he got into this trouble; that he had known defendant Pache for three or four years, but had not seen or talked to him by telephone or otherwise for about a year prior to February, 1932; that defendant Pache never came to his house in February, 1932, and that the conversations Pache testified to never took place; that on the 21st of February, 1932, he was in Los Angeles; that he never went to Tiajuana, Mexico, or to Johnson's Distillery therein in the month of February, 1932, with defendants or any one else at any time and never bought any liquor or intoxicating beverages at Johnson's or any other distillery in Tiajuana; that defendant Jeffers is his brother-in-law, but he never knew of his having any dealings with Pache, Talbot, or Grade until after he, appellant, was arrested.

Defendant Jeffers, called as a witness for appellant, testified that prior to February 25, 1932, he never had any conversation with Pache about transporting, buying, or selling intoxicating liquors; that he met Pache on that date a little after noon, and at the latter's request took him in his car to Imperial Beach, where Pache said he had some prospects for the sale of Ford cars; that while there, a little while before dark, they saw an æroplane flying low down the beach, saw it light, and a man get out of the plane; that they went to the plane and observed there were sacks and cases in it; that they returned to San Diego; that later in the evening Pache came to see him and suggested that they "go back and try to get that stuff out of the plane"; that Pache said he would get the contents and sell it; that he would give him $50 to go down there with his car and help him out, and that he finally agreed; that they had just one car, which he drove, and Pache did not drive a Chevrolet; that they went down to the plane and took the stuff out, and then went back to get his car; that he did not

know where the plane came from, nor to whom it belonged; that defendant Moyer knew nothing about that plane that day that he knew of; that he never talked to him about it and had not seen him for several days; that the car he drove on that day was his car in his name; that his nephew, defendant Moyer's son, was paying for this automobile.

R. L. Kingsbury, a witness for defendant, testified that he had been in the Ford business in San Diego since 1932; that he was acquainted with defendant Pache and knew "his general reputation for truth, honesty and veracity in the community in which he lives, and it is bad."

Nels Croftholdt, a witness for defendant, testified that he was employed by the Distribuidora Mexicana; that this company's business is to take all of the merchandise from the Johnson's Distillery and sell it; that to his knowledge in the month of February, 1932, his company did not sell any alcohol to the defendant Moyer, and Moyer did not purchase any alcohol in February, 1932; that there are other distilleries in Tiajuana.

E. J. Christian, a witness for defendant, testified that in February, 1932, he was employed at the Johnson Distillery as superintendent; that he did not know any of the defendants; that his company did not to his knowledge sell any alcohol to people who were going to smuggle it in the United States; that Mr. Johnson, the owner, on February 25, 1932, was in Mexico City, and lived there and has been there for approximately two years.

W. A. Calhoun, a witness for defendant, testified that he had been living in Los Angeles for approximately three years; that he had known defendant Moyer for twelve years; that they visited each others houses; that defendant Moyer was at his home in Los Angeles in February, 1932, arriving on Saturday the 20th, and leaving on Tuesday the 23d.

Earl Lookor testified for defendant that he lived with witness Calhoun in Los Angeles, and otherwise corroborated the latter's testimony.

Appellant claims prejudicial error in respect to rulings of the trial court limiting the cross-examination of the witness Pache. Such rulings are covered by eight exceptions. Relative to the date of the meeting at San Diego between defendants Pache, Moyer, Grade, and Talbot, followed

on the same day by the trip to Tiajuana, Pache testified on cross-examination:

"All of this took place on approximately the 21st. I don't remember Washington's Birthday that year. I don't remember that the day after his trip was Washington's Birthday. I was arrested on the 25th. * * * I will say this conversation took place prior to the 25th."

"Q. What is your best recollection?

"The Court. He has given his best recollection. Proceed with the next question.

"Mr. Sanders. I would like to ask the question for the purpose of the record.

"The Court. Proceed.

"Mr. Sanders. It is a very important date.

"The Court. He has given it to you to the best recollection. If you have any particular date to call to his attention, why put it.

"Q. Is the 21st your best recollection, 21st of February?

"Mr. Thomas. It has been already asked and answered.

"The Court. Sustained."

It is manifest from the testimony of defendant and that of other witnesses called on his behalf that a date fixed by the witness Pache for the meeting at San Diego and the trip to Tiajuana was an important date. In his direct examination Pache testified: "I fixed the time of the meeting on the 21st and met him there. There was Moyer, Talbot, Grade and myself." Upon cross-examination his testimony was: "All this took place on approximately the 21st." The defendant and two witnesses called in his behalf testified that defendant was in Los Angeles on that date, remaining there until the 23d.

Another ruling limiting cross-examination of the witness Pache respecting a question of time is presented in the following excerpt from the record:

"On the 25th, I went to Moyer's house and had a conversation with Moyer when Jeffers was present. Moyer introduced me to Jeffers and said that he would—Jeffers would take care of the alcohol. * * *

"Q. That is the first time you knew Jeffers had anything to do with it? A. Yes.

"Q. What time of day was it? A. It was in the morning.

"The Court. He has already gone over that several times. It is immaterial from the testimony whether it was eight or nine o'clock. Proceed with the next question.

"Mr. Sanders. May we except to the Court's order?

"The Court. Proceed with the next question. * * *

"The Court. I say the objection is sustained. If you desire to fix a specific time for the purpose of impeachment, then you can fix the time yourself for that.

"Q. Was this conversation around noon?

"A. No, it was prior to noon.

"Q. How long prior?

"Mr. Thomas. Same objection.

"The Court. Same ruling. * * * Proceed with the next question."

The record does not disclose that the witness Pache had theretofore fixed the time or the approximate time of a meeting with defendant Moyer at the latter's house on the 25th. In his direct examination he fixed the time of a meeting with defendant Grade "in the morning about 8:30," and a later meeting with Grade "about 11:00." By inference from his testimony the meeting with defendant Moyer was some time between 8:30 and 10 o'clock. We think the court below could not assume that the time of the meeting as testified to by Pache was immaterial so long as it was some time within the space of an hour. The time fixed for the occurrence of an act which is in controversy as to whether or not it occurred at all may be of the very greatest importance, and cross-examination of the chief witness should leave no question respecting its reasonableness. This situation is illustrated by the variance in the testimony of Pache concerning the meeting on or about February 21st. As before stated, on his direct examination he testified, "I fixed the time of the meeting on the 21st," and on cross-examination referred to the time as "approximately the 21st." Commenting on the testimony in instructing the jury, the court said: "Now then on the other hand, we have the defendant coming on the witness stand and he testified before you and he denied every statement that was made, testified to by Pache with relation to the conspiracy; that they had been in Mexico at the time that Mr. Pache said he was; denied, and had witnesses who testified he was in another place, Los Angeles, on Washington's birthday and a few days before, I think the Saturday before and so he couldn't have been. Now then, what did

Pache say with relation to the date? Did he fix the date positively, or did he fix it at an approximate date? You will have to take all of these matters into consideration, twelve fair minded men."

What the record discloses Pache did was to fix the date positively on direct examination and on cross-examination at an "approximate date," and finally "prior to the 25th." The importance of these dates as testified to by one witness only, and that witness an admitted accomplice, justified a searching cross-examination. The limitations imposed by the court below cut off an examination which at that time may not be said to have reached the limits of a reasonable cross-examination. Alford v. United States, 282 U. S. 687, 51 S. Ct. 218, 220, 75 L. Ed. 624; Madden v. United States (C. C. A.) 20 F.(2d) 289, 292.

■ It is urged that the following instruction was error: "There is testimony here that at least one or two of the other conspirators, other than Pache, were present at some of these conversations. They know what transpired. They were all in court yesterday. It is a rule of law that when any witness who knows of facts that are being determined in court are available and are not called to testify, to state what they know, then the court or the jury may assume that such witnesses if called would testify against the party who should have called them. Now then if you feel that either party in this case, either the government or the defendant should have called these other defendants who pled guilty yesterday morning and who were present at some of these conversations with Moyer, and didn't call them to testify, then you would have the right to assume that such witness would have testified against the party who should have called that witness. Now whether either party should have called them here I am not going to say, but I am simply stating this rule of law to you."

There was only one of the defendants, defendant Grade, available as a witness who had not been called. The defendant Moyer had testified: "That conversation (one with defendant Pache) took place around two years ago and that is the last time I ever talked to him either personally or over the telephone. I didn't know Mr. Grade until I got into this trouble. I never knew him before in my life and had never seen him and I never knew Mr. Talbot before and had never seen or heard of him."

According to the testimony of Pache, defendant Moyer had not met Grade or Talbot prior to the meeting testified to by him on or about February 21st. The instruction in effect assumes that Grade was "present at some of these conversations with Moyer," when the only testimony on the subject was in conflict as between defendants Pache and Moyer as to whether there were such conversations. Unquestionably Grade could testify whether or not he was present at a conversation or conversations with defendant Moyer on or about February 21st. He had interposed a plea of guilty to the conspiracy charge. He had a right to remain silent respecting the facts of the case whether called upon to make a statement by either the prosecution or defense, unless called as a witness. The instruction left to the jury to determine whether he should have been called as a witness and by whom. They could have determined that if the defendant was testifying truthfully he should have called him to testify, and as he did not call him they could assume his testimony would not be in accord with that of Moyer. The effect would be that the jury could and might assume that if called as a witness Grade would corroborate the testimony of Pache. The rule we think should not be applied in the case of one who might be called as a witness who is a codefendant, and has entered a plea of guilty, and as to whom sentence has not been imposed. Of one in that position the Supreme Court in Alford v. United States, supra, said: "Nor is it material, as the [Circuit] Court of Appeals [41 F. (2d) 157] said, whether the witness was in custody because of his participation in the transactions for which petitioner was indicted. Even if the witness were charged with some other offense by the prosecuting authorities, petitioner was entitled to show by cross examination that his testimony was affected by fear or favor growing out of his detention. See Farkas v. United States, supra [(C. C. A.) 2 F.(2d) 644]; People v. Dillwood, 4 Cal. Unrep. 973, 39 P. 438."

■ Where, as in this case, the only witness available who was not called was equally accessible to both the prosecution and the defendant on trial, the rule is that no unfavorable inference can be drawn against either the prosecution or the defense by reason of a failure to call such witness. Egan v. United States, 52 App. D. C. 384, 287 F. 958, 969; Grunberg v. United States (C. C. A.) 145 F. 81, 88;

16 C. J. 541; Sacramento Suburban Fruit Lands Co. v. Boucher (C. C. A.) 36 F.(2d) 912.

The instruction as given was prejudicial error. It is unnecessary to consider other assignments.

The judgment is reversed and the cause remanded for a new trial.