Charles F. LEAHY, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 16287.

United States Court of Appeals
Ninth Circuit.

Nov. 16, 1959.

Rehearing Denied Jan. 25, 1960.

Arthur D. Klang, Clark A. Barrett, San Francisco, Cal., for appellant.

Lynn J. Gillard, U. S. Atty., John Kaplan, John H. Riordan, Jr., San Francisco, Cal., for appellee.

Before CHAMBERS, ORR and POPE, Circuit Judges.

ORR, Circuit Judge.

█ Appellant was convicted on two counts of an indictment charging him with (1) evasion of an occupational tax due on wagering activities and (2) conspiracy to evade such payment. Incident to an arrest of appellant, the arresting officers seized and took possession of certain papers, etc. Thereafter and before trial, appellant moved to suppress the seized articles. A hearing was held and the motion denied. The cause came on for trial and the seized articles were introduced into evidence over the objection of appellant. Subsequent to verdict a motion for a new trial was made in which the failure to suppress and the overruling of the objection to the introduction of the evidence was stressed. The trial judge, who did not hear the motion to suppress, dismissed count one of the indictment because of its belief that the case of Miller v. United States, 1958, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332, handed down by the Supreme Court of the United States subsequent to the denial of the motion to suppress and the overruling of the objection to the introduction of the evidence, required it. The trial court refused to dismiss count two, giving as its reason that notwithstanding its belief that the evidence obtained by the search and seizure was inadmissible there was other evidence sufficient to sustain the conviction. This theory is incorrect. The rule, as we understand it, is that if substantial inadmissible evidence goes before the jury, then, notwithstanding there is remaining substantial admissible evidence which would support a verdict, a new trial is required because the court cannot know what evidence influenced the minds of the jurors. Some, if not all, may have been in part at least persuaded to bring in a guilty verdict by the inadmissible evidence.

██ At this point, appellant comes forward with the claim that although the trial court did not dismiss count two, by reason of the fact that it expressed a view that the seized evidence was inadmissible, we are bound thereby on this appeal because the government cannot

appeal. The answer is that the government has not appealed nor attempted to appeal. It is brought to this court by appellant upon his complaint that the trial court committed error in refusing to suppress certain evidence and its erroneous allowance of the introduction of said evidence at the trial. The government has a right to respond to an appeal and the appeal of appellant imposes upon us the duty of determining the questions which he raises thereon. The statement of the trial court as to its opinion of the admissibility of the seized evidence in so far as count two is concerned is no more than an expression of opinion. We have no such situation as existed in Umbriaco v. United States, 9 Cir., 1958, 258 F.2d 625. There the government attempted to appeal. It was without that privilege. The instant case is completely different from Alford v. United States, 9 Cir., 1930, 41 F.2d 157. There the defendant appealed claiming that the evidence was insufficient to support the verdict. In defending the verdict, the government asked the appellate court in making its determination to consider evidence improperly excluded by the trial court and not considered by the jury. This an appellate court may not do. In the instant case, on the other hand, the evidence in question had been considered by the jury, and may, therefore, also be considered by this court if we determine that the evidence had been properly admitted into evidence by the trial court. Here the validity of the search and seizure is squarely presented by appellant and hence we proceed to its consideration.

We present the facts in narrative form. A revenue agent obtained a valid warrant for appellant's arrest. He, accompanied by other agents, proceeded to serve it, and for that purpose gained admittance to appellant's premises by stating that he was an agent from the County Assessor's Office. Once the agent was inside appellant's home appellant was placed under arrest. The agents searched the premises and seized certain articles. They had no search warrant. Thus two questions are presented. Was the arrest made in accordance with law, and, if so, was the search and seizure made within the permissible area incident to a lawful arrest?

Section 3109 of Title 18 U.S.C.[1] provides that unless an officer executing a search warrant first gives notice of his authority and purpose and is then refused admittance, he may not "break open" any door or window. The same requirements apply to arrests. Miller v. United States, 1958, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332. There existed no such requirements in the instant case since they did not "break open" a door or window. See United States v. Bowman, D.C.D.C.1956, 137 F.Supp. 385. Misrepresentation of identity in order to gain admittance is not a breaking within the meaning of the statute. In Miller v. United States, supra, the petitioner, having opened the door part way on an attached door chain, attempted to close it upon seeing the officers but they prevented him from doing so. The officers ripped the chain off the door in order to gain admittance. The court held this constituted a breaking. No such force was employed in the instant case. In Gatewood v. United States, 1953, 93 U.S.App.D.C. 226, 209 F.2d 789, officers knocked on the door announcing that they were from Western Union. The door was opened part way, and when petitioner in that case attempted to close it upon seeing them, the officers forced the door open. The court there held that fraud followed by force constituted a breaking. It will be noted that the element of force was present in each of the cited cases which distinguishes them from the instant case. See also United States v. Silverman, D.C.D.C.1958, 166 F.Supp. 838.

Section 3109 codifies a common law rule the history of which is reviewed in

---

1. "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance * * *"

the Miller case and in Accarino v. United States, 1949, 85 U.S.App.D.C. 394, 179 F.2d 456. An early authority quoted in the Accarino opinion states that the rule was necessary since " * * * breaking an outer door is, in general, so violent, obnoxious, and dangerous a proceeding * * *" (179 F.2d at page 461). But mere deception is different. In Parke v. Evans, 80 Eng.Rep. 211, Hob., 62 (1724) it is stated that " * * * Parke's wife came to the door, and opened it a little to see who was there, and they presently with their swords drawn rusht in upon her whether she would or no * * * and brake open the chamber door * * *" The court held the " * * * entry unlawful, for the opening of the door was occasioned by craft, and then used to the violence which they intended." On the other hand, in Rex v. Backhouse, 98 Eng.Rep. 533, Lofft, 62 (1763) an officer gained entrance into Backhouse's home on the pretense of having a note which Backhouse would be glad to see. Once inside, he made the arrest, " * * * and Backhouse said his house was his castle" and aimed what the officer took for a pistol (actually a sugar hammer). The officer fled. Lord Mansfield in holding Backhouse guilty of assault necessarily held the entry by the officer legal. Hence the distinction exists in common law that falsehood alone does not invalidate an arrest and applying that distinction here we have a different picture than that presented in Gatewood v. United States, supra, where there was fraud followed by force. See Wilgus, Arrests Without a Warrant, 22 Mich.Law Rev. 798, 806 (1924).

In California, which has a statute (Pen.Code, § 844) similar to § 3109, it is settled that the use of trickery or subterfuge to gain entrance in order to execute an arrest warrant is immaterial to the validity of the arrest. People v. Scott, 1959, 170 Cal.App.2d 446, 339 P.2d 162; People v. Lawrence, 1957, 149 Cal.App.2d 435, 308 P.2d 821.

■■ There is no constitutional mandate forbidding the use of deception in executing a valid arrest warrant. The case of Gouled v. United States, 1921, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647, relied on by appellant, holds that a search without a warrant is invalid even though entry is procured by stealth rather than force. The instant case is different in that the search was incident to an arrest under a valid arrest warrant. "Criminal activity is such that stealth and strategy are necessary weapons in the arsenal of the police officer." Sherman v. United States, 1958, 356 U.S. 369, 372, 78 S.Ct. 819, 820, 2 L.Ed.2d 848. Such weapons were necessary and wisely used here. The record discloses that the door to appellant's premises was a heavy one and would have required much time and labor to break open. The officers feared that if they announced their identity before entry, evidence would be destroyed and other establishments which were being simultaneously raided warned before entry could be made therein. Violence was also feared, and such fear was later supported by the finding of rifles, shotguns and eight pistols on the premises. In analogous cases and similar circumstances courts have refused to condemn the use of deception. United States ex rel. Caminito v. Murphy, 2 Cir., 1955, 222 F.2d 698 (confession procured by confronting defendant with false identification witnesses); Bruno v. United States, 9 Cir., 1958, 259 F.2d 8 (prosecution of defendant on basis of his dealings with police officer who had assumed a false identity); Schwarz v. Artcraft Silk Hosiery Mills, 2 Cir., 1940, 110 F.2d 465 (use of fraud to serve process on person within court's territorial jurisdiction); Hitchcock v. Holmes, 1876, 43 Conn. 528 (entry by stealth to attach property).

■ There being no unlawful entry into appellant's premises, the execution of the warrant of arrest was valid and the revenue agents were empowered to make a reasonable search incident to such arrest without a search warrant. United States v. Rabinowitz, 1950, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653. Such a search may extend beyond the person of the one arrested to the premises under his immediate control, including the entire house where the officers have reasonable grounds to believe that the means

and instrumentalities by which the crime charged was committed may be concealed in any room of the house. The search to be reasonable is not limited to the room appellant happens to have been in at the time of the arrest. Harris v. United States, 1946, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399. There is nothing in the record to indicate that the arrest was merely a pretext for the purpose of conducting a general exploratory search for merely evidentiary materials tending to connect the accused with some crime. The revenue agents in the instant case seized an adding machine, a telephone, record books, receipts, pencils, pens, money and the keys to safety deposit boxes, as well as a number of rifles, shotguns and pistols. It is clear from the items seized that the search was specifically directed to the instrumentalities used in the commission of the crime of unlawfully engaging in the business of wagering. The records of an illicit business are instrumentalities of crime. Marron v. United States, 1927, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (officers incident to arrest may lawfully seize account books and papers used in carrying on the criminal enterprise). Such were the records obtained in this case. The search was, therefore, a reasonable one. Harris v. United States, supra. The motion to suppress was properly denied and the objection to the admission of the evidence at trial properly overruled.

The record supports the contention that the officers had good reason for waiting until appellant entered the house before arresting him. They feared a car chase and a gun battle in the streets which would endanger human life, whereas an arrest in the house could be safeguarded and, in addition, escape could be prevented by surrounding the house.

The arrest was not made in the house solely for the purpose of enabling a search without a warrant. See McKnight v. United States, 1950, 87 U.S. App.D.C. 151, 183 F.2d 977.

Other contentions made by appellant have been examined and we find them to be without merit.

Judgment affirmed.

POPE, Circuit Judge (concurring).

I agree that the absence of a breaking in by force serves to distinguish this case from Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332. My search has failed to turn up any case equating a ruse or fraud with force.

But I think the evidence here in question was properly received for another reason. The arrest here followed other arrests and a search pursuant to a search warrant at another betting location. There the occupants had warning of what was up as the agents first announced they were federal officers and then broke the door with a sledge hammer. By the time they got in the room was full of smoke from the betting sheets and papers which had been set on fire. In my view, in a case of this kind, we can take judicial notice that when an attempt is made by officers to enter a betting parlor, there will be an attempt to destroy evidence if the operators have warning. For this reason we have here the exceptional case suggested or referred to in Miller v. United States, supra, (357 U.S. at page 309, 78 S.Ct. at page 1195),[1] United States v. Jeffers, 342 U.S. 48, 52, 72 S.Ct. 93, 95, 96 L.Ed. 59,[2] and Johnson v. United States, 333 U.S. 10, 15, 68 S.Ct. 367, 369, 92 L.Ed. 436.[3] I think the obvious danger of another bonfire of evidence was sufficient warrant for what was done here.

1. "There are some state decisions holding that justification for non-compliance exists in exigent circumstances, as, for example, when the officers may in good faith believe that they or someone within are in peril of bodily harm, Read v. Case, 4 Conn. 166, or that the person to be arrested is fleeing or attempting to destroy evidence. People v. Maddox, 46 Cal.2d 301, 294 P.2d 6."

2. "There was no question of violence, no movable vehicle was involved, nor was there an arrest or imminent destruction, removal, or concealment of the property intended to be seized."

3. "No evidence or contraband was threatened with removal or destruction. * * *"