## BUCKSTAFF v. RUSSELL.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF NEBRASKA.

No. 207. Argued and submitted January 17, 1894. — Decided February 5, 1894.

Where in an action on a contract a counter claim to the amount of $10,000 is interposed by the defendant, and judgment is given for plaintiff for less than $5000, this court has jurisdiction to review that judgment when brought here by defendant below.

When one party contracts to set up a machine for another party, and the other party contracts to pay for it, one-third when the machine is steamed up ready to run, and the balance at a future time, with interest; and it is mutually agreed that the buyer shall satisfy himself before payments are due that the machine works to his satisfaction, and if it does not, that the seller shall within 60 days after notice, comply with the terms

of his contract or the buyer may declare it paid in full, the proper remedy of the seller, after delivery of the machine and refusal of the buyer to accept it, is an action on the contract to recover the contract price, and not an action for breach of the contract by refusal to accept the machine.

The requirement that an assignment of error, based upon the admission or rejection of evidence, must, in the case of a deposition, excluded in whole or in part, state the full substance of the evidence so admitted or rejected, does not apply where the witness testifies in person, and where the question propounded to him is not only proper in form, but is so framed as to clearly admit of an answer favorable to the claim or defence of the party producing him.

When the court in such case does not require the party, in whose behalf the question is put, to state the facts proposed to be proved by the answer, the rejection of the answer will be deemed error or not, according as the question, upon its face, if proper in form, may or may not clearly admit of an answer favorable to the party in whose behalf it is propounded.

When objection is made to a question to a witness as incompetent, irrelevant, and immaterial, and the objection is sustained, the court may or may not, within its discretion require the party, in whose behalf the question is put, to state the facts proposed to be proved by the answer.

THIS was an action in contract. Judgment for plaintiff to which defendant sued out this writ of error. The case is stated in the opinion.

*Mr. John H. Ames,* for plaintiffs in error, submitted on his brief.

*Mr. T. M. Marquett* for defendants in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

1. It is suggested that the amount in dispute is less than five thousand dollars. This point is not well taken. The amount for which Russell & Co. sued in their original petition was $4206.07, with interest from October 9, 1888. That amount was increased by the supplemental petition to $5882.20. The plaintiffs in error, who were defendants below, denied their liability in any sum, and, by way of counter claim, in accordance with the practice in Nebraska, asked for judg-

ment against Russell & Co. in the sum of $10,000. The verdict and judgment were in favor of the plaintiff and for the sum of $4450. That sum, and the amount sued for in the counter claim, are in dispute upon this writ of error. This court, therefore, has jurisdiction.

2. By an agreement in writing, made June 22, 1888, between Russell & Co., a corporation, and Buckstaff and Utt, the former agreed to furnish and deliver to the latter on cars at Lincoln, Nebraska, three boilers, 60 inch x 14 feet; one automatic cut-off engine, 125 horse power; one automatic cut-off engine, 50 horse power; one Gordon Maxwell duplex pump; one Garfield injector; one heater, and any necessary fittings of sufficient size and dimension to properly run such plant; also two smoke-stacks 32 inch diameter, 60 feet long, made of No. 12 iron, with fancy tops, guy rods and stays. For those articles Buckstaff and Utt agreed to pay four thousand nine hundred and fifty dollars, as follows: One-third cash when the machinery was "steamed up ready to run; the balance in six and twelve months, with interest at the rate of seven per cent per annum from time of erection in Lincoln, providing that, with proper and careful management, said engines, boilers, and pumps are hereby guaranteed to work, and that said engines do give the amount of horse power as herein specified, and to be as economical of fuel and as durable as a Corliss non-condensing engine." "It is also understood and agreed," the contract proceeded, "that said Buckstaff and Utt shall use fair and honorable means to satisfy themselves before payments are due, that said engines, boilers, and pumps are working to their entire satisfaction, and should they not be, then, in that event, the said Buckstaff and Utt are to notify said Russell & Co., and said Russell & Co. must at once comply with the terms of this contract within sixty days, and in the event they do not, the said Buckstaff and Utt may declare this contract paid in full, or said Russell & Co. shall pay back to said Buckstaff and Utt all money paid to them, and said Russell & Co. shall pay said Buckstaff and Utt such damages as shall be declared fair by competent judges, and after paying such damages may remove said machinery without cost to

said Buckstaff and Utt. It is hereby agreed that Russell & Co. shall ship said machinery not later than July 15, 1888."

Attached to and made part of the contract are certain proposals from Russell & Co. to Buckstaff and Utt. One of them is a proposal to furnish three eighty horse power boilers, fully described, and contains this stipulation: " All boilers tested to 150 pounds hydraulic pressure; workmanship and material guaranteed to be first class; plans for setting boilers to be furnished without expense to purchaser." Another is a proposal to furnish one right-hand automatic cut-off engine, fully described, and contains this stipulation: " We guarantee the above engine to be well made, of first class material, and in operation to work as economically as any similar engine in the market." A third is a proposal for another right-hand automatic cut-off engine, accompanied by a similar guaranty.

In the first count of the petition it was alleged that all the machinery covered by the contract was delivered by the plaintiff to the defendants in strict accordance with its terms; that the defendants were to pay for it the sum of four thousand nine hundred and fifty dollars, one-third in cash when the machinery was steamed up ready to run, one-third in six months, and the remaining one-third in twelve months, with interest at the rate of seven per cent per annum from the time of the erection of said machinery; that all of the machinery had been delivered, was set up, put in operation, and commenced running on the 9th day of October, 1888, at which time one-third of the four thousand nine hundred and fifty dollars became due; that another one-third became due on the 9th day of April, 1889; that neither of those amounts nor any part thereof have been paid by the defendants; and that they have refused and neglected to pay the same or any part thereof, although often requested so to do. The second count was for piping and other machinery of the value of $392.86, and the third for grate bars, of the value of $450, alleged to have been sold and delivered by Russell & Co. to the defendants. By a supplemental petition the plaintiff enlarged its claim so as to embrace the last instalment of the $4950 for which the contract stipulated.

At the trial below the defendants objected to the introduction of any evidence in support of the first count of the petition, on the ground that it did not state facts sufficient to constitute a cause of action. This objection was overruled, and to that ruling the defendants excepted.

In support of this exception it is said that if it had been alleged, or indeed proven, that the plaintiff did not "use fair and honorable means to satisfy themselves," before payment was due, that the machinery was "working to their entire satisfaction," or that the refusal to accept was fraudulent, still no action could have been properly maintained for the sale and delivery of the property; because, at all events, there would have been no acceptance, and, in its absence, the contract would have remained executory; consequently, it is argued, the only action maintainable, if any, would have been one to recover damages for fraudulently refusing to accept the machinery and articles furnished. The counsel for the defendants refer to numerous cases which, it is insisted, sustain the construction of the contract upon which this exception is founded. It may be well to refer to some of those cases.

In *Mansfield Machine Works* v. *The Village of Lowell*, 62 Michigan, 546, 552, which was a suit upon a contract with a village for the sale of a steam engine and attachments, and which contract provided that a named sum should be paid "when engine and hose are accepted, balance in equal payments — first, on or before six months; second, on or before eighteen months, with interest at six per cent from date of acceptance," it was held that the contract fairly construed, did not provide for the payment for the engine and machinery until they were tried and accepted; that under its terms the property remained in the vendor until acceptance and after trial of it, the village never becoming the owner of it; and that the remedy of the plaintiff, if any, would be a suit for a breach of the contract and refusal to accept on the part of the defendant.

In *Zaleski* v. *Clark*, 44 Connecticut, 218, 223, which was a suit for the price agreed to be paid for a plaster bust of the deceased husband of the defendant — the agreement being

that she was not bound to take it unless she was satisfied with it — the question was as to the liability of the defendant upon proof that the bust was not only a fine piece of work, and a correct copy of a photograph furnished by the defendant, but that it accurately portrayed the features of the deceased. The court said: "In this case, the plaintiff undertook to make a bust which should be satisfactory to the defendant. The case shows that she was not satisfied with it. The plaintiff has not yet, then, fulfilled his contract. It is not enough to say that she ought to be satisfied with it, and that her dissatisfaction is unreasonable. She, and not the court, is entitled to judge of that. The contract was not to make one that she *ought* to be satisfied with, but to make one that she *would* be satisfied with. Nor is it sufficient to say that the bust was the very best thing of the kind that could possibly be produced. Such an article might not be satisfactory to the defendant, while one of inferior workmanship might be entirely satisfactory. A contract to produce a bust perfect in every respect, and one with which the defendant ought to be satisfied, is one thing; and undertaking to make one with which she will be satisfied is quite another thing. The former can only be determined by experts, or those whose education and habits of life qualify them to judge of such matters. The latter can only be determined by the defendant herself. It may have been unwise in the plaintiff to make such a contract, but having made it, he is bound to it."

In *Brown* v. *Foster*, 113 Mass. 136, 138, which was an action to recover the price of a suit of clothes which it was agreed should be satisfactory to the purchaser, but with which he was not satisfied and for which he refused to pay, the court said: "If the plaintiff saw fit to do work upon articles for the defendant and to furnish materials therefor, contracting that the articles when manufactured should be satisfactory to the defendant, he can recover only upon the contract as it was made; and even if the articles furnished by him were such that the other party ought to have been satisfied with them, it was yet in the power of the other to reject them as unsatisfactory. It is not for any one else to decide whether a refusal to accept is or is not reasonable, when the contract permits

the defendant to decide himself whether the articles furnished are to his satisfaction. Although the compensation of the plaintiff for valuable service and materials may thus be dependent upon the caprice of another who unreasonably refuses to accept the articles manufactured, yet he cannot be relieved from the contract into which he has voluntarily entered."

Among many other cases of the same class are *Singerly* v. *Thayer*, 108 Penn. St. 291; *Goodrich* v. *Van Nortwick*, 43 Illinois, 445; *McCarren* v. *McNulty*, 7 Gray, 139; *Cole* v. *The Common Council of Homer*, 53 Michigan, 438; *Gibson* v. *Cranage*, 39 Michigan, 49; *Krumb* v. *Mersher*, 116 Penn. St. 17; *Ellis* v. *Mortimer*, 4 Bos. & Pul. (1 N. R.) 257.

These authorities do not control the determination of the present case. There is no provision in the contract of June 22, 1888, which either expressly or by necessary implication justified the defendants in withholding payment for the articles furnished on the ground alone that they were not satisfied with them. They agreed to pay in cash one-third of the stipulated price when the machinery was "steamed up, ready to run," the balance in six and twelve months with interest at seven per cent "from time of erection in Lincoln." If, after using fair and honorable means, before the payments became due, to test their efficiency, the engines, boilers, and pumps did not work to their entire satisfaction, then Buckstaff and Utt were entitled to notify Russell & Co. to comply with the contract within sixty days, in default of which, but in that event only, they could have declared the contract "paid in full," or Russell & Co. could have been required to pay back all money paid to them, and, in addition, such damage as was declared fair by competent judges — Russell & Co. having the right to remove the machinery after paying such damage. The plaintiff was entitled to recover the price stipulated, unless it appeared that such means had been used, and that the engines, boilers, and pumps were, in that way, ascertained not to work to the entire satisfaction of the defendants; that due notice thereof was given to the plaintiff; and that plaintiff did not comply with the contract within due time after receiving such notice. But these were matters to be disclosed

in the defence of the action, and need not have been made the subject of specific allegations in the petition. It was not necessary to allege in the petition that the engine, boilers, and pumps were ascertained by the defendants to work to their entire satisfaction. It was sufficient to allege the delivery of the articles, and the expiration of the time limited in the contract for the payments.

In respect to the guaranty of the plaintiff that the engines, boilers, and pumps would work, and that the engines would furnish the stipulated amount of horse power, and be as economical of fuel and as durable as a Corliss non-condensing engine, it need only be said that those were, also, matters to be alleged and proved by defendants in support of their counter claim.

For these reasons we are of opinion that the court properly overruled the motion of defendants to exclude all evidence in support of the first count of the petition.

3. The defendants in their answer deny the material allegations of the petition; and by way of counter claim allege that on or about the twenty-second day of June, 1888, the defendants, as the plaintiff then well knew, were the owners of all the capital stock of the Lincoln Paper Manufacturing Company, a corporation duly organized under the laws of Nebraska for the purpose of manufacturing paper in the city of Lincoln, in that State; and that on or about that date the plaintiff entered into the contract with the defendants, set forth in the first count of the petition, for the furnishing of boilers, engines, and machinery to generate and apply the power with which to drive the machinery to be used by them in said mill for the manufacture of wrapping and straw building board; that the plaintiff then well knew that, if said boilers, engines and machinery were not of the capacity and efficiency specified in the contract, then the defects and inefficiency of such machinery would of necessity cause the defendants great injury, cost, and damage in and about their manufacturing business, by reducing the quantity and degrading the quality of the paper to be manufactured at their mill, and by putting them to great cost and expense for loss of time and for labor, fuel, and material used, lost, and expended above such as

would be required with the use of boilers, engines, and machinery of the kind, power, effectiveness and economy specified in the contract; that the defendants entered into the contract in the expressed confidence, assurance and belief that the plaintiff would furnish for use in their mill boilers, engines, and machinery of the kind, quality, power, and description in the contract set forth; yet the plaintiff, in pretended compliance with the contract, furnished and erected in said mill three boilers of a capacity not exceeding sixty-five horse power each, and one engine of one hundred and twenty-five, and one of fifty horse power, and that said engines and boilers have at all times and still do consume in the performance of the work of which they are capable not less than fifty per cent more fuel than would be consumed in the performance of the same work by a non-condensing Corliss engine; and that plaintiff furnished with said boilers and engines defective and insufficient grates, fixtures, and appliances therefor, so that the same were for a long time less capable and effective than they would otherwise have been.

The defendants further alleged in their counter claim that, at the request of plaintiff, they allowed it, after the date of the erection of said machinery, to consume a long time in the attempt or pretended attempt to adjust the boilers, engines, and machinery, and supply them with grates and fittings so that the same would meet the requirements and descriptions of the contract, all of which attempts, or pretended attempts, have wholly and completely failed; that thereupon, on or about the eleventh day of January, 1889, and the eleventh and twenty-fifth days of February of said year, they duly notified the plaintiff, by letters properly transmitted through the United States mails, that such boilers, engines, and machinery were wholly inadequate, inefficient, and wasteful of fuel as compared with the requirements and descriptions of the contract, and demanded of it to remove the same from said mill and, pay defendants the amount of money, to wit, $690.68, paid by them to and for the use of plaintiff under the contract and the damages suffered by reason of the premises, as by the contract it had undertaken to do, with which request

the plaintiff has at all times neglected, and still wholly neglects and refuses to comply; and that by reason of the premises, of the wasteful consumption of fuel and lack of power, said boilers, engines, and machinery, and the consequent loss of time and labor, and the diminution in quantity and deterioration in quality of the output of said mill resulting from the non-compliance by plaintiff with the contract in the respects and particulars set forth, and in the purchase and supplying new grate bars and heater fittings and fixtures for such boilers and engines, the defendants have been damaged in the sum of ten thousand dollars. An account of the moneys so alleged to have been paid was annexed to the counter claim.

The plaintiff, in reply, denies that the machinery, etc., furnished by it, under the contract, was defective, and charges that their inefficiency, if they became inefficient, was due entirely to the unskilful and incompetent management of the defendants, their agents, and servants. While it denies that the defendants were the owners of "all" the capital stock of the Lincoln Paper Manufacturing Company, it does not deny that the machinery, etc., was purchased to be used in the mill of that company.

The defendant Utt was sworn as a witness for the defence, and, as we infer, in support of the counter claim. Having stated that he and Buckstaff, in April, 1888, first commenced negotiations for the purchase of the boilers with Mr. Giddings, representing Russell & Co., the following questions were put, successively, to him: 1. " What conversation did you have with him, if any, about the purpose for which the machine must be used and the necessity for steam capacity in the boilers?" 2. "You may state in what your damages consisted, and the amount in consequence of the defective construction and the failure of this machinery to perform its labor, and the labor required of it by the terms of the contract from the time of its erection up to the first day of March." 3. " You may state what damage you sustained in consequence of the failure of this machinery to do the work at the paper mill." 4. " You may state what loss you suffered in consequence of the defective construction and failure in the machinery." 5. " In

what particular did you and the defendant Buckstaff sustain loss by reason of the defects in the construction and the failure of this machinery ? "

Each of these questions was objected to upon the ground that it was incompetent, irrelevant, and immaterial. No one of them was objected to upon the ground that it was a leading question.

In the case of *Shauer* v. *Alterton, ante,* 607, just decided, it was held to be the settled construction of the twenty-first rule of this court that an assignment of error, based upon the exclusion of an answer to a particular question in the *deposition* of a witness, would be disregarded here, unless the record sets forth the answer or its full substance. *Packet Company* v. *Clough,* 20 Wall. 528, 542; *Railroad Co.* v. *Smith,* 21 Wall. 255, 262; *Thompson* v. *First National Bank of Toledo,* 111 U. S. 529, 535–6. Our rule, thus construed, is one to which parties can easily conform. Having access to the deposition containing the answer of the witness to the interrogatory, parties, as well as the trial court, are informed of the precise nature of the evidence offered. The requirement that an assignment of error, based upon the admission or rejection of evidence, must, in the case of a deposition, excluded in whole or in part, state the full substance of the evidence so admitted or rejected, means that the record must show, in appropriate form, the nature of such evidence, in order that this court may determine whether or not error has been committed to the prejudice of the party bringing the case here for review.

But this rule does not apply where the witness testifies in person, and where the question propounded to him is not only proper in form, but is so framed as to clearly admit of an answer favorable to the claim or defence of the party producing him. It might be very inconvenient in practice if a party, in order to take advantage of the rulings of the trial court in not allowing questions, proper in form and manifestly relevant to the issues, were required to accompany each question with a statement of the facts expected to be established by the answer to the particular question propounded. Besides, and this is a consideration of some weight, such a statement, in

open court, and in the presence of the witness, would often be the means of leading or instructing him as to the answer desired by the party calling him. If the question is in proper form and clearly admits of an answer relevant to the issues and favorable to the party on whose side the witness is called, it will be error to exclude it. Of course, the court, in its discretion, or on motion, may require the party, in whose behalf the question is put, to state the facts proposed to be proved by the answer. But if that be not done, the rejection of the answer will be deemed error or not, according as the question, upon its face, if proper in form, may or may not clearly admit of an answer favorable to the party in whose behalf it is propounded.

Tested by these views, the court below erred in not permitting the defendant Utt to answer the above questions. Each one of them was relevant to the counter claim, and each admitted of an answer that tended to support it.

After the court below refused to allow the defendant Utt to answer the above questions, he was asked: "You may state in what manner your industry was affected by the failure of this machinery." The witness answered: "When our mill was erected, we made contracts with different parties to put in certain machinery. In cutting straw there is a large amount of steam required. We purchased from Neill patent boilers at an expense of five thousand dollars, to be cooked with steam coming from the boilers. That was the proper way to do it. A lack of steam in the plant that we purchased made it impossible for us to cook this straw in these boilers, so after trying six or eight weeks to do this with this steam and succeeding very poorly, we took steam from the escape system that we had made in connection with the big engine, and since that time we have been using that steam, but it does not cook the straw well because the water condenses in these globe bleachers and has to be let out, and with them the liquor passes out that the straw is cooked in, and it makes an uneven cooking of the straw; it is not uniform. The straw is frequently tough, so that we take it over to the grinding machine, where it is ground up. Instead of grinding it up in two hours and a

half to three hours, it takes from four to four and a half to get it in proper shape."

To this question the plaintiff objected, and moved to strike out the answer as incompetent and irrelevant. The objection and motion were sustained by the court, and the defendants excepted. As we are informed by the bill of exceptions what were the facts intended to be elicited by the question and which, after being detailed, were excluded from the jury, it is competent for this court to inquire whether those facts were competent under the issues in the case, and whether the defendants were prejudiced by their exclusion from the jury. But, as the judgment below must be reversed for the errors already stated, we deem it unnecessary at this time to express any opinion as to the competency of this evidence. We adopt this course because it is not entirely clear that the matters referred to by the defendant Utt in his answer to this question had any connection, in fact, with the counter claim, or that they referred to any defects in the machinery covered by the written guaranty of Russell & Co. This difficulty may be removed at the next trial of the case.

In the brief of counsel for Russell & Co. there is some discussion as to the measure of damages, in the event it was found that the defendants were entitled to recover upon their counter claim. No question of that kind arises upon this writ of error. The only questions now presented for determination are those to which we have referred.

For the error indicated in this opinion, the judgment must be

*Reversed and the cause remanded for a new trial.*