**NORTH AMERICAN PHILIPS COMPA-
NY, Inc., Plaintiff-Appellant,**

v.

**Charles A. CHURCH, District Director of
Internal Revenue Service, Defendant-
Appellee.**

**No. 283, Docket 30764.**

United States Court of Appeals
Second Circuit.

Argued Feb. 8, 1967.

Decided March 21, 1967.

Melvin D. Kraft, New York City, for plaintiff-appellant.

Irwin B. Robins, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, Laurence Vogel, Asst. U. S. Atty., of counsel), for defendant-appellee.

Before MOORE, FRIENDLY and SMITH, Circuit Judges.

FRIENDLY, Circuit Judge:

North American Philips Co., Inc., affiliated in some undescribed manner with the well-known Dutch electrical and electronics manufacturer, brought this tax refund action against the District Director of Internal Revenue for the District of Manhattan in the District Court for the Southern District of New York. It sought to recover $29,427.98 in taxes paid between January 1, 1956 and July 31, 1958, on sales of four models of imported high fidelity speakers erroneously believed to be subject to the 10% excise tax levied on the sale of radio and television components by § 4141 of the Internal Revenue Code,[1] plus interest.

Section 4142 defines radio and television components to mean, broadly

1. Repealed by 79 Stat. 140 (1965).

speaking, only those cabinets, tubes, speakers, etc. that are suitable for use on, or in connection with, or as component parts of radio or television receiving sets or phonographs. In Rev.Ruling 56–228, 1956–1 Cum.Bull. 509, the IRS ruled that speakers with a voice coil impedance rating of 8 ohms or more were not radio or television components, and hence were not taxable, unless they were recommended for use as such by the manufacturer, whereas speakers with a lesser impedance rating were considered taxable unless proven to be unsuitable for use with a radio or television set or phonograph. In April 1958 North American Philips requested a ruling with respect to its speakers; the IRS decided on July 31 that four of them having impedances of 6–8 ohms were not subject to excise tax, whereas three others, with impedances of 4–6 ohms, were. The Service later denied North American Philips' claim for refund of taxes paid on the four speakers solely because § 6416(a) (1) (A) forbids a refund

> "unless the person who paid the tax establishes, under regulations prescribed by the Secretary or his delegate, that he—
>
> (A) has not included the tax in the price of the article with respect to which it was imposed and has not collected the amount of the tax from the person who purchased such article; * * *." [2]

and they did not consider that this was sufficiently established. In this action which followed, that also was the only issue.

Although North American Philips now makes much of the equitable nature of a refund action and of the difficulties in proving a negative, especially on such an issue as this statute raises, it demanded a jury trial. Doubtless it was this demand that led both sides to lay down a barrage of evidentiary objections that greatly impeded the trial—at least we should like to think so.[3] Although we have much sympathy for the judge in view of the many needless objections by both sides and the diffused presentation of plaintiff's case,[4] we are constrained to reverse and to direct a new trial because of error in the exclusion of certain evidence.

While plaintiff did not add the excise tax as such in invoices on the four speakers to non-manufacturers, this alone does not require a finding in its favor. See Jergens Co. v. Connor, 125 F.2d 686, 690 (6 Cir. 1942); Gay Games v. Smith, 132 F.2d 930, 932 (7 Cir. 1943); Norris Dispensers, Inc. v. United States, 325 F.2d 140 (8 Cir. 1963). The main thrust of plaintiff's case, developed through W. Semmelink, now its Assistant Vice President in charge of the High Fidelity Prod-

2. The statute derives from § 424 of the Revenue Act of 1928, 45 Stat. 791, 866, which was sustained and applied in United States v. Jefferson Elec. Co., 291 U.S. 386, 54 S.Ct. 443, 78 L.Ed. 859 (1934).

3. Another consequence of the jury demand, almost never encountered in a civil appeal, is plaintiff's complaint that the jury was subject to coercion by confinement for an unreasonable time, and by administration of the *Allen* charge, see Allen v. United States, 164 U.S. 492, 501, 17 S.Ct. 154, 41 L.Ed. 528 (1896), after the foreman had disclosed the numerical division of the jury.

4. Appellant's appendix is a splendid example of the necessity for the compulsory joint appendix recommended in the proposed Uniform Rules of Federal Appellate Procedure. It presents the testimony in bits and pieces and omits relevant cross-examination, in clear violation of the requirement of our Rule 15(b) that it present "such other parts of the record as are deemed necessary by the appellant or petitioner *fairly* to present the issues on appeal" [emphasis added], see Moran Towing Corp. v. M. A. Gammino Construction Co., 363 F.2d 108, 109 (1 Cir. 1966). While the Government helpfully supplied many of these deficiencies, this still requires the judges, in the words of the Advisory Committee on Appellate Rules, to "turn back and forth from appendix to appendix in order to examine what in the record was a single thread or a cohesive composite, a process which is time-consuming and invites error." See Drafts of Proposed Rule 30, pp. 9–10 (December 1966).

ucts Division but between 1956 and 1958 the manager of that division, was that it had priced the speakers, which were manufactured by Dutch Philips in the Netherlands, at a figure that would make them competitive with American made speakers of comparable quality and without specific consideration of the excise tax. While this was relevant, it was by no means completely probative on the issue North American Philips had to prove; its costs might have been so low that Semmelink could have included an amount sufficient to cover any excise in his competitive prices and still have come up with a reasonable profit. It thus became relevant for plaintiff to show whether its price-maker believed a tax was payable and also what its costs were since if these were high enough that the price would not cover them and the excise, the trier of the facts, drawing on general experience that businessmen do not like to sell below cost, might conclude that the price did not include the excise.

In an apparent effort to develop this, plaintiff's counsel asked Semmelink what the costs of the speakers were. This led to a confused discussion of whose costs were under inquiry, with counsel first stating he was inquiring about the cost to the European producer and then shifting ground and saying he was "only asking * * * about the cost to North American Philips." The judge remained under the impression generated by the first remark and therefore excluded the evidence, as was correct in the absence of any showing as to the relationship of the two companies. In what seems to have been an effort to get on the right track counsel then asked Semmelink whether he took the expenses of North American Philips into consideration in making his prices, but Government counsel made the highly technical objection, not even warranted, that the question was leading and the judge sustained him on that and other formal grounds. This might well be reversible

error were it not for an extraordinary development that occurred later. In cross-examination the Government asked Semmelink the very question as to North American Philips' costs which plaintiff's counsel had finally endeavored to put, and the latter, not to be outdone, objected on the incredible ground that the judge had ruled out the question when he had asked it. Naturally the judge overruled that objection, again making clear he had thought the earlier questions had concerned Dutch Philips' costs, but Semmelink said he could give only an approximation since his working papers containing this information had been destroyed. The Government then dropped the matter and plaintiff failed to renew it on redirect save by an attempt to excuse the destruction of the worksheets. Since plaintiff's counsel failed to ask Semmelink for the approximation of North American Philips' costs which he said he could give or to develop facts that would render Dutch Philips' costs in any way relevant, we would find no sufficient basis for reversal here.[5]

Counsel then turned to an effort to bring out that Semmelink didn't think an excise tax was payable and how he first learned the company was paying them. The opening gambit, "Mr. Semmelink, when did you first learn about the existence of the Federal excise tax," elicited a general objection which the court sustained on the ground that "It is not material when he learned about it. Everyone is supposed to know the law." Presumably what counsel wanted to show, but failed adequately to explain, was that Semmelink knew of the tax but thought it inapplicable, and therefore hadn't meant to include it in the price; he had indeed said this in his opening the previous day, but the judge was entitled to have it clearly stated again. Counsel then went on to develop how Semmelink first learned that excise taxes were being paid when on talking in mid-1956 to Forrer, the chief accountant, he remarked that the sales figures were lower

5. The issue can, of course, be developed on the new trial we are directing on other grounds.

than he had reason to expect and discovered that the accounting department had been reducing these by the amount of the excise tax. When Semmelink was asked what he told Forrer after learning this, Government counsel objected on the ground of the hearsay rule, making the inexplicable comment that while the previous utterances had not been offered to show their truth, these would be, and the judge sustained the objection. If plaintiff's counsel had made an offer of proof that Semmelink would testify he had told Forrer no tax was payable, continued exclusion would have been error since Semmelink's belief on this subject had some relevance and this statement, like its predecessors, would have been within the exception to the hearsay rule for declarations of present belief, see McCormick, Evidence § 268 (1954); 6 Wigmore, Evidence § 1731 (3d ed. 1940). Counsel made no such offer. Perhaps the case comes within the principle that no offer of proof is necessary if the question would "clearly admit of an answer relevant to the issues and favorable to the party" on whose side the witness is called. Buckstaff v. Russell, 151 U.S. 626, 637, 14 S.Ct. 448, 452, 38 L.Ed. 292 (1894). Cf. United States v. Cording, 290 F.2d 392, 394 (2 Cir. 1961). However, we need not decide this issue since we find another ground upon which reversal is required.[6]

■ Counsel then sought to introduce a number of exhibits designed to show in various ways, as he explained, that Semmelink was aware of the non-taxability of the four speakers; these were erroneously excluded as hearsay and irrelevant because posterior to the pricing decision. The serious question is whether the error was prejudicial; Semmelink's discovery, even his belief from the beginning, that the speakers would probably not be subject to excise would not forbid a conclusion that the company had protected itself by setting the price high enough to cover the tax if it turned out to be payable. Still the evidence passed the basic test of relevancy, "does the evidence offered render the desired inference *more probable than it would be without the evidence*" [emphasis added], McCormick, supra, § 152 at 319; for other formulations see 1 Wigmore, supra, § 38, and with this jury having deemed the case so close as to have deliberated almost fourteen hours over three days, we find it impossible to say that an error in excluding a number of exhibits giving some corroboration to Semmelink's interested testimony may not have affected the outcome.

■■ We need say little as to other evidentiary objections that may occur on a retrial which we hope will be to a judge alone in whose ability to separate the wheat from the chaff both parties might display some confidence. There was no error in excluding the papers submitted by plaintiff to the IRS; no one claimed its position in court to be anything but consistent with its stance before the Service. We cannot understand why the Government objected to the introduction of a catalogue of prices of competitive equipment Semmelink testified he used in setting his own and which he was allowed to use at trial to refresh his recollection; while the evidence may not have been necessary since it would merely reiterate Semmelink's testimony as to the cost of various competitors' models, it reinforced his testimony on that point and it fits within the exception to the hearsay rule for trade journals, see McCormick, supra, § 296; 6 Wigmore, supra, § 1704. Plaintiff's objections to the receipt of testimony from its then chief accountant showing it had computed its tax liability from 1956 to 1958 on the basis of $\frac{1}{11}$ of the price it had charged customers and had paid agents' commissions on the basis of $\frac{10}{11}$ of the price, and particularly to a memorandum by plaintiff's Assistant Treasurer con-

---

6. The same conclusion applies to an ensuing series of questions designed to elicit conversations between Semmelink and other company officials in which Semmelink expresses his belief that the tax was inapplicable. These were halted as irrelevant and plaintiff again failed to make an offer of proof.

taining the unfortunate statement that the tax had been "included in our sales price without any reference to F.E.T. [Federal Excise Tax] neither on the invoice, nor on our price sheets," are answered by the very argument that helps it with respect to exclusion of its own evidence, namely that testimony does not need to be conclusive in order to be relevant and admissible. Plaintiff's argument that a verdict should have been directed in its favor is of interest only in revealing how little it appreciates the burden the statute casts upon it.

Reversed for a new trial.