**HUTTER NORTHERN TRUST et al.,**
**Plaintiffs-Appellants,**

v.

**DOOR COUNTY CHAMBER OF COM-**
**MERCE, Defendant-Appellee.**

**No. 71–1300.**

United States Court of Appeals,
Seventh Circuit.

Argued June 9, 1972.

Decided Sept. 20, 1972.

Rehearing Denied Nov. 3, 1972.

John A. Hutter, pro se.

Sven V. Kirkegaard, James R. Smith, Sturgeon Bay, Wis., for defendant-appellee.

Before SPRECHER, Circuit Judge, DURFEE, Senior Judge, United States Court of Claims,* and ESCHBACH, District Judge.**

---

\* Senior Judge James R. Durfee of the United States Court of Claims is sitting by designation.

\*\* District Judge Jesse E. Eschbach of the Northern District of Indiana is sitting by designation.

DURFEE, Senior Judge.

Plaintiff Hutter, acting pro se, brought this action, based upon diversity of citizenship, in the United States District Court for the Northern District of Illinois. The essence of plaintiff's complaint is that he was illegally ousted from the Chamber of Commerce of Door County, Wisconsin, and as a consequence, has suffered considerable damage, including the loss of his business, the Chateau Hutter, a summer resort located in that county. The complaint, obviously drafted by a pro se plaintiff with little or no experience in pleading or practice, alleges causes of action for damages for breach of contract, interference with contract rights, deprivation of civil rights, and possibly for libel, slander, conspiracy and other wrongs. Issue was joined and a lengthy trial ensued, with over 1,200 pages of transcript of testimony. After plaintiff rested its case, defendant made a motion for a directed verdict, which was granted by the court. Plaintiff now appeals. The judgment of the District Court is reversed and the case remanded for a new trial.

In granting defendant's motion, the trial court concluded that "there has not been sufficient evidence offered and admitted by the court on behalf of plaintiff, either on the question of liability or damages to warrant the submission of the case to you as jurors. * * * In the opinion of the court, there is no competent evidence upon which the jury could base a valid finding against the defendant." This was a correct statement of the legal requirement for a directed verdict. Plaintiff's appeal asserts a plethora of challenges to this order, but does include the usual ground that there was sufficient evidence to warrant the submission of "the cause to the jury."

Plaintiff presented his case pro se. Although the trial judge stated that "Hutter is an experienced lawyer", plaintiff stated that he had never tried a lawsuit and never appeared before a jury. Our review of the record supports this conclusion that plaintiff lacked even the minimal amount of legal experience and ability to adequately represent himself pro se.

In attempting to present evidence to support his cause in over 1,210 pages of transcript, plaintiff was confronted with a constant fusillade of over 1,800 objections by defendant's counsel without any reason therefor being stated. These incessant objections were usually sustained by the trial judge without any statement of the basis for the ruling, despite plaintiff's many requests therefor because of his inexperience with the rules of evidence. Plaintiff was thus constantly thwarted in his attempts to present testimony in support of his case. Out of the 1,210 pages of the transcript, there are less than 100 pages of admitted testimony. This is not to imply that all of the questions propounded by plaintiff were unobjectionable. However, as the trial progressed, it is apparent that its usual sequence was for plaintiff to ask a question, for defense counsel to object, and for the court to sustain the objection, without stating any grounds for the ruling, as requested by plaintiff.

For instance, plaintiff on direct examination of Robert Metivir, a witness who had been a guest at Hutter's resort, did ask leading questions, which if properly presented, could have been relevant and material. When the court sustained defendant's objections, the following colloquy took place:

Plaintiff: Your Honor, isn't it customary for counsel when he makes an objection to state the grounds for that objection?

The Court: Not when the objection is obvious.

Plaintiff: They are not obvious to counsel for plaintiff.

The Court: They are to the Court. (Tr. 395).

Consequently, no explanation was provided. The particular questions which had just been asked by plaintiff do appear to have been objectionable as leading. It cannot be assumed plaintiff would have been unable to rephrase the

questions so as to make them not leading, if he had the benefit of the reasons for the court's ruling. However, in effect, this procedure was denied plaintiff. This was not merely an isolated incident, but rather characteristic of the entire trial. Thirty pages later plaintiff was questioning on direct examination another witness who had been a guest at the resort. Counsel for defendant was still objecting without specifying the grounds for doing so, and the trial judge, accordingly, was still sustaining the objections without any explanation as to the basis for his rulings:

Q. In 1961 or '62 when you were a guest at Chateau Hutter Resort, will you describe the dining room? [sic]

Counsel for Defendant: Objection. Furthermore we went through that before lunch.

The Court: I sustain the objection.

Q. When you were at Chateau Hutter, what was the entertainment provided by the management?

Counsel for Defendant: Objection.

The Court: I will sustain the objection.

Q. In 1961 or '62 when you were a guest at Chateau Hutter, is there anything you did besides sleep and eat?

Counsel for Defendant: Objection.

The Court: I sustain the objection. (Tr. 424–25).

Ten questions and ten objections later, all of the objections being sustained, the following exchange took place between plaintiff and the trial judge:

Plaintiff: It seems to me, your Honor, that this is about the time now when our opponent here, opposing counsel, should state the reason for his objection.

The Court: I will state the reason because I am the one who must assume the responsibility for the rulings. The objections to all of these questions have been sustained because the questions are not proper under the law of evidence.

Plaintiff: Why?

The Court: I don't—I am not a lecturer here. I used to teach but I gave that up, Mr. Hutter. I am not employed here as a lecturer on the law of evidence. I tell you as a matter of law of evidence the questions are improper and it is not incumbent on a trial judge to tell a lawyer how to ask his questions, if, indeed, they can be asked properly. That will be the only reply I care to make to your question. You may continue, sir, with your direct examination of this witness. (Tr. 427–28).

In the remaining ten pages of transcript containing the direct examination of this witness, this pattern continued, except that counsel for defendant would occasionally state the basis for his objection. Again, it is apparent that some of the objections made by counsel for defendant had a reasonable basis, although in most cases neither the court nor counsel were willing to say what this basis might be. Moreover, there were questions asked by plaintiff, which were excluded by the court, which were not obviously objectionable, if indeed they were objectionable at all. Here too, no explanation was given by the court, notwithstanding plaintiff's request. Later, during plaintiff's direct examination of his wife, the following exchange occurred:

Counsel for Defendant: May I remain standing for a while? It may save the wear and tear of getting up and down.

The Court: The government has supplied comfortable chairs. If you want to stand, you may stand.

Counsel for Defendant: Thank you.

Q. (by plaintiff): When did John Hutter and you join the Door County Chamber of Commerce?

A. Immediately after it [Chateau Hutter] was finished.

Q. Do you know what year that was?

Counsel for Defendant: Your Honor, may I have that question read because—

The Court: You want it read?

Counsel for Defendant: The answer, I am sorry.

The Court: The question and answer?

Counsel for Defendant: Just the answer.

The Court: Miss Reporter, please read the answer of the witness.

(Record read)

Counsel for Defendant: I move to strike the answer as not responsive to the question.

The Court: It is not responsive to the question. I do strike it and direct the jury to disregard it.

Q. What year, about, approximately, did you and John Hutter join the Door County Chamber of Commerce?

Counsel for Defendant: Objection, your Honor. It is leading.

The Court: I sustain the objection.

Q. When did the resort become a member of the Chamber of Commerce?

Counsel for Defendant: Same objection, your Honor.

The Court: I sustain the objection. (Tr. 25–27).

Q. What years was Chateau Hutter a member of the Door County Chamber of Commerce with partial privileges?

Counsel for Defendant: Objection, your Honor, to the use of "partial privileges" without definition. I object to the question for that reason.

The Court: I sustain the objection.

Q. What years was Chateau Hutter denied the privileges of membership in the Door County Chamber of Commerce?

Counsel for Defendant: Objection, your Honor, as leading and suggestive. It assumes facts not in evidence.

The Court: I sustain the objection. (Tr. 55)

■ Plaintiff later sought to elicit testimony on direct examination from the manager of the Door County Chamber of Commerce by way of leading questions. In response to plaintiff's claim that the witness was a hostile witness, the court responded that such had not been demonstrated. What plaintiff failed to do was to draw the distinction made in Rule 43(b) (Fed.R.Civ.P. 43(b)), between hostile or unwilling witnesses, and an adverse party or officer of an adverse party. Whereas the witness would clearly come within the latter category, and thus be subject to leading questions on direct examination, it is at least a colorable contention that he might not come within the former category. It seems somewhat incongruous that in the same proceeding in which the trial judge granted such considerable leeway to defendant's counsel, that plaintiff acting pro se would be required to turn such square corners.

■ Appellant requested that, as a pro se plaintiff, he be permitted to testify in narrative form. This request was denied, and the denial was well within the proper exercise of the judge's discretion. Appellant then contends that when he took the stand as a witness, he was not permitted to "testify to anything" for over 300 pages of transcript. This contention by appellant is somewhat of an exaggeration; however, suffice it to say that while many of the questions which appellant asked himself were objectionable, many of those which were excluded were not. In passing, it is difficult to see how a question propounded by a witness who is examining himself can rationally be objected to as leading. Moreover, while on the stand, appellant was not permitted to refer to a trial

memorandum which he had prepared.. It is difficult to determine the nature of this document, and to the extent that it provided the basis for appellant's proffered testimony the action of the trial judge may have been altogether proper. However, to the extent that it was merely a trial memorandum of the questions that, as his own attorney, appellant wished to ask, the basis for the trial judge's rulings is unclear.

■ A litigant has the right to act as his own attorney, with certain exceptions not applicable here. However, if he does so, he should be restricted to the same rules of evidence and procedure as those qualified to practice law; otherwise, ignorance is unjustifiably rewarded. Lombardi v. Citizens National Trust & Savings Bank, 137 Cal.App.2d 206, 289 P.2d 823 (1955). Plaintiff here could not be excused from a failure to prove his cause of action because of his own ignorance of the law.

However, in *Lombardi, supra,* the court did point out:

"It is the duty of a trial judge to see that a cause is not defeated by 'mere inadvertence', Hellings v. Wright, 29 Cal.App. 649, 156 P. 365, or by 'want of attention'; Bare v. Parker, 51 Cal. App. 106, 196 P. 280, 281 and 'to call attention to omissions in the evidence or defects in the pleadings' which are likely to result in a decision other than on the merits, Farrar v. Farrar, 41 Cal. App. 452, 182 P. 989, 991, and 'within reasonable limits' by proper questions 'to clearly bring out the facts so that the important functions of his office may be fairly and justly performed.' In re Estate of Dupont, 60 Cal.App.2d 276, 140 P.2d 866, 873."

In *Lombardi, supra,* the pro se plaintiff offered documents which were objected to on the ground that there was no proof as to their signature. The objection was sustained for failure to lay a foundation for the introduction of the document. Plaintiff Lombardi then stated, "I don't know what to do." The court replied, "I can't tell you. I am try-ing the case, I am not an attorney to advise you," and thereafter granted a nonsuit for failure of proof. The objection in *Lombardi* was specific, not general, and the ruling of the court advised Lombardi that he would have to present evidence in proof of the signature of the document. The court commented, "This is not a case where a few suggestions on the part of the part of the trial judge would have solved plaintiff's difficulty. Had it been such, the trial judge would undoubtedly have followed the customary practice and offered appropriate suggestions."

■ Although specific objections to questions propounded by counsel are generally preferred, general objections are not proscribed *per se.* McCormick Evidence, § 52 (2d ed. 1972). "It will be assumed [in the case of a general objection which is sustained], in the absence of any request by the opposing party or the court to make the objection definite, that it was understood, and [if any ground exists for the exclusion] that the ruling was placed upon the right ground." McCormick, *supra* § 52. ".If the offering counsel, however, requests of the objector and the judge the reason for objection, and the request is denied, when if the grounds have been furnished they could have been obviated, the ruling can be attacked." *Id.* at n. 45.

Although, in some instances in which defendant's objections were sustained, plaintiff did make an offer of proof, this was not uniformly done. However, as the Supreme Court said in Buckstaff v. Russell, 151 U.S. 626, 637, 14 S.Ct. 448, 452, 38 L.Ed. 292 (1894), "[i]f the question is in proper form, and clearly admits of an answer relevant to the issues and favorable to the party on whose side the witness is called, it will be error to exclude it [even absent an offer of proof]." In the present case, many of the questions propounded by plaintiff in his direct examination were properly objectionable, but an even larger number of the questions to which objections were sustained were proper in *form* and did

clearly admit of an answer both relevant to the issues and favorable to plaintiff.

 A District Court's judgment should not be reversed if errors in exclusion of evidence are not prejudicial to substantial rights of the appellant. Commercial Credit Corp. v. United States, 175 F.2d 905, 908 (8th Cir. 1949); 28 U.S.C. § 2111; Fed.R.Civ.P. 61. Harmless error is often found when substantially equivalent evidence has been admitted. Crown Cork & Seal Co. v. Motor Pharmaceuticals, 417 F.2d 921, 926–927 (6th Cir. 1969). Clearly, this is not such a case. The record demonstrates that the exclusion of evidence which plaintiff attempted to introduce in a proper manner was essential to his case. It was therefore prejudicial error to exclude it. See Thurber Corp. v. Fairchild Motor Corp., 269 F.2d 841, 844 (5th Cir. 1959).

We cannot say as to any theory advanced by plaintiff that, as a matter of law, there was sufficient evidence to warrant submission to the jury. We simply do not know. The numerous erroneous evidentiary rulings of the trial court precludes us from any meaningful review of what admissible, relevant evidence would have been placed before the jury without such rulings. Having concluded that these numerous evidentiary rulings were prejudicial, we decide only that plaintiff was denied a fair trial. We do not mean to indicate that on remand another judge, after having correctly ruled on the evidence, could not conclude that defendant was entitled to a directed verdict on one or more of the theories advanced by plaintiff.

Accordingly, the order of the trial court granting defendant's motion for a directed verdict is reversed, and this case is remanded to the District Court for a new trial.[1]

---

1. This is the third appeal which Hutter has filed in this court. It is with some misgivings that we remand this case to the District Court for another trial, recognizing plaintiff's own inability in presenting his case pro se to do so in a fashion which would tend to promote its orderly disposition. However, based on the record before us, there is no other choice.