991 F.2d 799
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Alice P. HUNT, Plaintiff-Appellee,
v.
WAL-MART STORES, INCORPORATED, Defendant-Appellant.
 No. 92-1976.
 United States Court of Appeals, Seventh Circuit.
 Submitted Jan. 5, 1993.
Decided April 22, 1993.
 
 1
 Before BAUER, Chief Judge, MANION, Circuit Judge, TERENCE T. EVANS, District Judge*.
 
 ORDER
 
 2
 Just a little over 2 years ago, on January 31, 1991, Alice Hunt and her husband Brian drove to the Wal-Mart store (actually a Sam's Club store) in Lafayette, Indiana, to do some shopping. The Hunts parked their car in Wal-Mart's lot, which at the time was covered with ice. While walking toward the store, Ms. Hunt fell and was injured. Claiming that Wal-Mart negligently allowed the ice to accumulate on its parking lot, Ms. Hunt filed suit. The case was filed in federal court because Ms. Hunt and Wal-Mart were residents of different states.
 
 
 3
 The case was tried to a jury, which found that Wal-Mart was 55 percent at fault in causing the accident and that Ms. Hunt was 45 percent at fault. Damages, after an appropriate reduction of 45 percent, were awarded by the jury to Ms. Hunt in the total amount of $29,425.
 
 
 4
 Wal-Mart appeals from the jury's verdict, arguing that certain testimony from one of its witnesses, Steven Baumgartner, was improperly excluded during the trial. Because we believe it was not an abuse of discretion for the trial court to exclude the testimony, we affirm.
 
 
 5
 Wal-Mart's witness, Mr. Baumgartner, was the owner of the Baumgartner Trucking and Excavating Company. The company, which had been in business for approximately 20 years, had contracts for snow and ice removal with several Lafayette area businesses. One of its customers was Wal-Mart Sam's Club in Lafayette. Mr. Baumgartner testified that he did not use any sand or ice melt on Wal-Mart's parking lot while the contract was in effect. Mr. Baumgartner also testified that he never recommended that Wal-Mart use sand or ice melt on its parking lot.
 
 
 6
 When Thomas Davis, Wal-Mart's counsel, asked Mr. Baumgartner about the use of an ice melt/sand mixture on other parking lots that he took care of in the Lafayette area, Michael Trueblood, Ms. Hunt's counsel, objected, and the following occurred:
 
 
 7
 Q Did you have occasion back in 1990 and 1991 to use the ice melt sand mixture on these other parking lots for which you were contracted?
 
 
 8
 MR. TRUEBLOOD: Objection. Relevance, Your Honor. This isn't a community standard test.
 
 
 9
 MR. DAVIS: It's a reasonableness test, Your Honor, and I think it clearly is relevant. It goes to the question of the reasonableness of Wal-Mart's response to these community-wide conditions.
 
 
 10
 MR. TRUEBLOOD: Your Honor, its reasonableness based on the conditions as they existed on January 30th and 31st, 1991.
 
 
 11
 THE COURT: Sustained. I think that the reasons for use of snow and ice melt elsewhere, there is no established connection to the reasons why it may or may not have been used here.
 
 
 12
 Sustained.
 
 
 13
 Wal-Mart's counsel then made an offer to prove, outside the hearing of the jury.
 
 
 14
 MR. DAVIS: He just wanted to get definite what we need to do. I would like to either reoffer the question, make an offer to prove that if permitted to testify Mr. Baumgartner would testify that he does not use ice melt on any of the parking lots in the area which he is under contract including specifically not generally this particular time that's at issue in this case.
 
 
 15
 MR. TRUEBLOOD: We have a relevance question with that, Your Honor, with the conditions that existed on that day. Their may be 25 loads out there who were negligent with regard to the but the question is whether it's relevant.
 
 
 16
 MR. DAVIS: It doesn't establish it, but it's relevant on the question.
 
 
 17
 MR. TRUEBLOOD: It's not relevant to the question.
 
 
 18
 THE COURT: I guess what I fail to see is the connection between the reasons why some other business may have decided not to call upon them to use it, and the reasons why this person did could be a different type of lot, might have different things in their carts, and for that reason I have to reaffirm my decision to keep it out.
 
 
 19
 MR. DAVIS: But the offer to prove--
 
 
 20
 THE COURT: You may show that, right.
 
 
 21
 MR. DAVIS: Thank you.
 
 
 22
 We, of course, review trial court evidentiary rulings under the deferential abuse of discretion standard. See Nachtsheim v. Beech Aircraft Corp., 847 F.2d 1261, 1266 (7th Cir.1988). This court has repeatedly recognized that the trial court's balancing of probative value and unfair prejudice is highly discretionary, and the trial court's decision on admissibility will be accorded great deference. Geitz v. Lindsey, 893 F.2d 148 (7th Cir.1990). As noted in Geitz,
 
 
 23
 [u]nder the "abuse of discretion" standard of review, the relevant inquiry is not how the reviewing judges would have ruled if they had been considering the case in the first place, but rather whether any reasonable person could agree with the District Court.
 
 
 24
 In addition to this well-settled law we note, of course, that even when error is found in the exclusion of evidence, a judgment will not be reversed unless the error was prejudicial. Hutter Northern Trust v. Doer County Chamber of Commerce, 467 F.2d 1075 (7th Cir.1972). Errors are often determined to be harmless when substantially equivalent other evidence has been admitted.
 
 
 25
 We think the trial court, given its broad discretion, did not err in prohibiting Baumgartner from telling the jury that he didn't use ice and snow removal products on other parking lots that he serviced in Lafayette. The issue in this case as regards Wal-Mart was whether or not it was negligent in the manner in which it maintained its parking lot on the day that Ms. Hunt slipped and fell. It was not unreasonable for the trial court to conclude that what the owners of other parking lots did was not material on this point. And even if it was conceded that the offered evidence was relevant under a "custom or habit" analysis, the evidence could have easily been rejected as being more prejudicial than probative under rule 403 of the Federal Rules of Evidence. If received, Baumgartner's testimony on this point might have required the plaintiff to present evidence of different conditions on different parking lots of different sizes facing different types of clientele. For instance, whether it was reasonable to use ice and snow melting materials on a parking lot in front of a pizza parlor that required a walk of only a few feet might be different than the requirements for using ice removal materials on a big parking lot used by many customers at a large operation like the one Wal-Mart was running in Lafayette.
 
 
 26
 And lastly, even if the offered evidence was improperly excluded, it would be harmless error in this case. Looking at Baumgartner's testimony as a whole, we note that he told the jury that he made no recommendation to Wal-Mart regarding the use of sand or ice melt. He also testified that he had never had an occasion during the tenure of the contract to put ice melt or sand on the parking lot. Mr. Baumgartner's testimony was then directed toward his practice in regard to snow and ice removal from other businesses in the Lafayette area. He was asked how much ice melt his company had used over the last 3 or 4 years. Over objection, he testified that he had used, at most, only 300 pounds of ice melt over that period of time at the other Lafayette businesses he served. He was allowed to give his opinion as an expert in regard to whether or not an ice melt/sand mixture would have helped combat the ice conditions which existed when Hunt fell. He said, without objection,
 
 
 27
 I don't believe it would have much effect on the ice at all at those temperatures.
 
 
 28
 Given this testimony, it is hard to see how much more Wal-Mart would have been helped by getting the excluded evidence before the jury. Accordingly, even if that testimony was (1) relevant and (2) not excludable under rule 403, its absence from this case was harmless error.
 
 
 29
 The judgment is affirmed.
 
 
 
 *
 The Honorable Terence T. Evans, Chief Judge of the United States District Court for the Eastern District of Wisconsin, is sitting by designation